

FILED

DEC 1 1 2015

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 15 CR 708 |
| v. | Judge Andrea R. Wood |
| ARTHUR HOLMER | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ARTHUR HOLMER, and his attorneys, PATRICK M. COLLINS and CHRISTOPHER J. O'MALLEY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Plea Agreement have agreed upon the following:

### Charge in this Case

2. The information in this case charges defendant with making false statements and causing false statements to be made to a mortgage lending business, in violation of Title 18, United States Code, Section 1014.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorneys.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with making false statements

and causing false statements to be made to a mortgage lending business, in violation of Title 18, United States Code, Section 1014.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Sentencing Guideline § 1B1.3:

Defendant ARTHUR HOLMER was a co-owner and co-principal of a private real estate investment firm known as Wells Street Companies, Inc. HOLMER also was a co-manager of certain corporate entities affiliated with Wells Street Companies, including Wells Street Equities, LLC.

Wells Street Equities acquired and managed commercial and residential properties in Chicago, Illinois, including mixed-use buildings located at 2852-2856 North Southport Avenue/1411 West George Street and 2954-2958 North Sheffield Avenue. Wells Street Equities formed separate companies to own and operate the George Street and Sheffield Avenue properties, namely, George Street Investors, LLC and Sheffield Avenue Investors, LLC. Wells Street Equities was the managing member of George Street Investors and Sheffield Avenue Investors.

Wells Street Equities financed its real estate acquisitions and development with mortgage loans, private mezzanine financing, and investor capital. Among the financial institutions which financed Wells Street Equities' real estate ventures was

UBS Real Estate Securities, Inc., a mortgage lending business whose activities affected interstate commerce.

The operations of George Street Investors and Sheffield Avenue Investors were governed in part by operating agreements executed by the manager and members of those companies. Each operating agreement obligated the manager, Wells Street Equities, to use company funds only in the best interests of the company and in connection with the company's business. The operating agreements further set forth, among other things, the rights and priorities of the companies' members (investors) with respect to distributions of cash and residual proceeds from major capital events, such as mortgage refinancings. The operating agreement for Sheffield Avenue Investors expressly prohibited Wells Street Equities from cross-collateralizing the Sheffield Avenue property.

In 2011, Wells Street Equities, in its capacity as managing member of George Street Investors and Sheffield Avenue Investors, applied for a commercial loan from UBS, seeking to refinance existing mortgages on the George Street and Sheffield Avenue properties. Wells Street Equities posted both properties as collateral for the loan, without the knowledge of investors who had equity interests in the properties and in violation of the operating agreement for Sheffield Avenue Investors, which prohibited cross-collateralization.

In connection with the loan origination process, HOLMER signed and submitted to UBS, and caused to be signed and submitted to UBS, various loan documents and supporting financial records in his capacity as co-manager of Wells

3

Street Equities, which was the listed manager of the borrowers, George Street Investors and Sheffield Avenue Investors. Among the documents submitted and caused to be submitted by HOLMER to UBS were false documents, including:

  a. false operating agreements for George Street Investors and Sheffield Avenue Investors;

  b. false financial statements entitled "Rent Rolls," which purported to reflect the true amounts of rental income collected on a monthly and yearly basis from tenants in the George Street and Sheffield Avenue buildings, but which inflated the amounts of rental income actually collected from such tenants; and

  c. multiple false Subordination, Non-Disturbance and Attornment Agreements and Tenant Estoppel Certificates to support the loan.

In his capacity as a co-manager of Wells Street Equities, HOLMER knowingly submitted those false documents to UBS, and caused such false documents to be submitted to UBS, for purposes of inducing UBS to approve a commercial loan in an amount exceeding $6,000,000. UBS approved and funded a loan in the amount of approximately $6,500,000, unaware that false documents had been submitted to it during the loan origination process.

As charged in the information, in or about December 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, HOLMER knowingly made false statements and caused false statements to be made to a mortgage lending business, namely, UBS, for the purpose of influencing the action of UBS upon an application for a commercial loan. More specifically, HOLMER knowingly

submitted false Rent Rolls to UBS, and caused false Rent Rolls to be submitted to UBS, for purposes of inducing UBS to approve a commercial loan to George Street Investors and Sheffield Avenue Investors in an amount exceeding $6,000,000.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum term of imprisonment of 30 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the Court also may impose a term of supervised release of not more than five years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided in part by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2015 Guidelines Manual.

      b.    **Offense Level Calculations.**

          i.    Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7.

          ii.    Pursuant to Guideline § 2B1.1(b)(10)(C), the base offense level is increased to level 12 because the offense involved sophisticated means and defendant intentionally engaged in and caused the conduct constituting sophisticated means.

          iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c. **Criminal History Category.** Based on the facts now known to the government, defendant's criminal history points equal 0 and his criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** If the Court adopts the sentencing guideline calculations as set forth above, then the anticipated offense level total will be 10, which, when combined with the anticipated criminal history category of I, will result in an anticipated advisory sentencing guidelines range of 6-12 months of imprisonment, in addition to any term of supervised release and fine the Court may impose.

e. Defendant and his attorneys and the government acknowledge that the above sentencing guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.  Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.  Each party is free to recommend whatever sentence it deems appropriate.

11.  It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.  Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

8

13. Defendant agrees that the United States may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572 and 3613, notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

14. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 15 CR 708.

15. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a

9

concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

          i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

          ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

          iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt

beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorneys would be able to cross-examine them.

    vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742,

afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pretrial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the government in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

17. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and

related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and tax return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

21. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

22. Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following his conviction, the additional approval of the Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by a term of imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

23. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

24. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: 12/10/15

_____
ZACHARY T. FARDON
United States Attorney

_____
BRIAN R. HAVEY
Assistant United States Attorney

_____
ARTHUR HOLMER
Defendant

_____
PATRICK M. COLLINS
Attorney for Defendant

_____
CHRISTOPHER J. O'MALLEY
Attorney for Defendant